893 F.2d 605
 WASTE CONVERSION, INC., Plaintiff,
v.
ROLLINS ENVIRONMENTAL SERVICES (NJ), INC. and Rollins
Environmental Services (FS), Inc. Defendants.
Appeal of Matthew P. BOYLAN, Esquire and Louis A. Minella,
Esquire, Appellants.
 No. 89-1184.
 United States Court of Appeals,
Third Circuit.
 Argued July 21, 1989.
Reargued In Banc Dec. 12, 1989.
Decided Jan. 11, 1990.
 
 Matthew P. Boylan (Argued), Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, N.J., for appellants.
 Richard L. Caplan, Dawnn E. Briddell (Argued), Caplan & Luber, Philadelphia, Pa., for appellee.
 Before STAPLETON, SCIRICA, and WEIS, Circuit Judges.
 Reargued In Banc Dec. 12, 1989.
 Before GIBBONS, Chief Judge, HIGGINBOTHAM, SLOVITER, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, and WEIS, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 After a witness was subpoenaed for a discovery deposition, his attorneys filed a motion to dismiss the underlying action and advised the witness not to appear. At a hearing to show cause why the witness should not be held in contempt, the district court absolved him but held his lawyers in criminal contempt. Because we find the evidence insufficient to show guilt beyond a reasonable doubt, we reverse the order of the district court.
 
 
 2
 In the underlying action, plaintiff Waste Conversion, Inc. alleged in its October 7, 1988 complaint that Rollins Environmental Services, Inc. had fraudulently misrepresented the nature of certain waste materials that it had delivered to plaintiff for transportation to and deposit in a Michigan landfill. An understanding of the issue on appeal requires an examination of the chronology of the underlying litigation.
 
 
 3
 On December 22, 1988 the parties stipulated that the time for Rollins to file a response would be extended to April 1, 1989. On December 29, 1988 plaintiff's lawyer served on Rollins' counsel a notice to take the discovery deposition of Rollins employee Steven Petner on January 10, 1989, and in addition, asked for the production of documents. Rollins refused to produce Petner until issue was joined, but offered to comply with the request for documents. Plaintiff countered by serving Petner with a subpoena on January 19 directing him to appear for a deposition on January 27, 1989.
 
 
 4
 On January 25, 1989 Rollins moved for dismissal of the suit asserting that it lacked merit and had been brought for the purpose of obtaining discovery for use in a state agency proceeding in New Jersey. In its memorandum of law filed in support of the motion, Rollins stated that it had notified plaintiff's counsel that Petner would not appear for a deposition. The memorandum included a footnote in which Rollins requested "that all discovery be stayed pending the outcome of this motion."
 
 
 5
 Two days later plaintiff filed a "Motion to Compel Compliance with a Testimonial Subpoena" asking that Steven Petner be compelled to appear, that he be adjudged in contempt pursuant to Federal Rule of Civil Procedure 45(f), that he "and/or his attorneys (who appear to have wrongfully counseled him not to appear)" reimburse plaintiff for its reasonable expenses including attorney's fees, and that he be fined $500 per day for any unexcused failure to comply with the requested court order.
 
 
 6
 On February 2, 1989 the district court denied without prejudice the motion to compel compliance, but directed that Petner appear at a hearing on February 6 to show cause why he should not be held in contempt for failing to obey the subpoena. The order did not mention Rollins' counsel in any way.
 
 
 7
 During the hearing Rollins' attorneys, Louis A. Minella (in-house lawyer) and Matthew P. Boylan, argued that Petner was not at fault in failing to honor the subpoena because he did so on their advice. Boylan stated that he and his associates considered whether they had grounds for a protective order under Fed.R.Civ.P. 26(c), but concluded that the situations listed in the Rule apparently did not apply to their case. It had not occurred to him that a motion to quash the subpoena under Rule 45 might be appropriate; Boylan relied instead on the request for a stay of discovery in Rollins' memorandum of law supporting dismissal.
 
 
 8
 Boylan explained that in New Jersey (where he had practiced for many years), filing a motion to dismiss generally was understood as staying discovery. He conceded that this local custom is not set out in the federal rules and that it is a "loose practice." But Boylan asserted, "There was no thought to be in contempt of this Court, your Honor, or to disobey any Order." After some further discussion, the district judge addressed Petner:
 
 
 9
 The Court: Mr. Petner, I can't find that you are at fault at all in this. You recognize that that was a command to appear.
 
 
 10
 ....
 
 
 11
 The Court: And yet you, I take it, you felt that you had no choice but to follow your attorney's advice?
 
 
 12
 The Witness: Yes, sir.
 
 
 13
 The Court: All right. I'm holding each of you [Minella and Boylan] in contempt of court and fining you each $500.00. Is there anything further that you wish to say?
 
 
 14
 Boylan protested that the court's contempt citation was not appropriate under the circumstances: "I think that we did not do this in any bad faith or willfulness. That we did not follow the Rules, you have made quite clear to us, but that it is not in any sense contumacious of this court...." The district judge responded that he considered it "contumacious when a Member of the Bar advises a client to break the law; to disregard the law; to disregard lawful Orders of the Court." Boylan and Minella appeal.
 
 I.
 
 15
 Federal Rule of Criminal Procedure 42 governs criminal contempt proceedings. Rule 42(b) requires that notice and hearing be given in every case where the contempt may not be summarily punished. Boylan and Minella never received notice that they were the subjects of a criminal contempt proceeding, and consequently, Rule 42(b) was not observed.
 
 
 16
 Moreover, the order to show cause did not specify that the hearing was for criminal contempt, see United States v. North, 621 F.2d 1255, 1265 (3d Cir.) (in banc), cert. denied, 449 U.S. 866, 101 S.Ct. 199, 66 L.Ed.2d 84 (1980), nor did the court arrange to have the matter prosecuted by the United States Attorney, or by a private special prosecutor other than counsel representing plaintiff, see Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 801-02, 804, 107 S.Ct. 2124, 2134-35, 2136, 95 L.Ed.2d 740 (1987).
 
 
 17
 These deficiencies are troublesome and present questions of plain error as well as appellee's standing. But because Boylan and Minella in argument before a panel of this Court disavowed any reliance on procedural irregularities, and in view of our disposition of this case, we need not discuss those issues any further.
 
 II.
 
 18
 The substantive issue left for our determination is whether there was sufficient evidence to sustain a conviction of criminal contempt, a judgment that requires proof of guilt beyond a reasonable doubt. Young, 481 U.S. at 798, 107 S.Ct. at 2133; Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 444, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911); In re Grand Jury Proceedings Harrisburg Grand Jury 79-1, 658 F.2d 211, 217 (3d Cir.1981).
 
 
 19
 The power of a court to punish for contempt is one of ancient lineage and extends back as far as medieval times. J. Fox, The History of Contempt of Court 1 (1927). Although specifically conferred by the Judiciary Act of 1789, the power was viewed by courts as one inherent in their role as judicial entities. As the Supreme Court stated in United States v. Hudson & Goodwin, 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812),
 
 
 20
 "Certain implied powers must necessarily result to our Courts of justice from the nature of their institution.... To fine for contempt--imprison for contumacy--inforce the observance of order, [etc.] are powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others...."
 
 
 21
 It was not long after Hudson, however, that Congress acted to curb the contempt power of federal judges. District Judge James H. Peck was impeached after he had held an attorney in criminal contempt for publicly criticizing one of the judge's opinions.[1] Judge Peck was acquitted, but Congress passed the Act of Mar. 2, 1831, ch. 99, Sec. 1, 4 Stat. 487, restricting the power of federal judges in contempt proceedings. That Act is the forerunner of the statute currently in effect and codified at 18 U.S.C. Sec. 401.[2]
 
 
 22
 Notwithstanding the statutory restrictions in place, the Supreme Court reaffirmed the inherent contempt power of the courts: "That the power to punish for contempts is inherent in all courts, has been many times decided and may be regarded as settled law." Michaelson v. United States ex rel. Chicago, St. Paul, Minneapolis & Omaha Ry., 266 U.S. 42, 65, 45 S.Ct. 18, 20, 69 L.Ed. 162 (1924). See Ex parte Robinson, 86 U.S. (19 Wall.) 505, 510, 22 L.Ed. 205 (1873). The Court has cautioned repeatedly, however, that exercise of the authority "must be restrained by the principle that 'only [t]he least possible power adequate to the end proposed should be used in contempt cases.' " Young, 481 U.S. at 801, 107 S.Ct. at 2134; United States v. Wilson, 421 U.S. 309, 319, 95 S.Ct. 1802, 1808, 44 L.Ed.2d 186 (1975); Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 231, 5 L.Ed. 242 (1821). Despite the potential for conflict, the inherent power doctrine and statutory restrictions have managed to co-exist without substantial difficulty over the years.
 
 
 23
 Against this historical background, we consider the current contempt statute. Section 401 reads:
 
 
 24
 "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none others, as--
 
 
 25
 (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
 
 
 26
 (2) Misbehavior of any of its officers in their official transactions;
 
 
 27
 (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."
 
 
 28
 18 U.S.C. Sec. 401.
 
 
 29
 Neither section 401(1) nor 401(2) applies to the circumstances of this case. The attorneys' alleged misbehavior in counseling the witness against complying with the subpoena did not occur in the presence of the court or near thereto. The alleged contempt, therefore, was indirect, and not within subsection (1). See Nye v. United States, 313 U.S. 33, 49, 61 S.Ct. 810, 816, 85 L.Ed. 1172 (1941) (" '[N]ear' ... suggests physical proximity not relevancy"). The conviction here cannot be predicated on subsection (2) because "officers" of the court does not include attorneys. Cammer v. United States, 350 U.S. 399, 407-08, 76 S.Ct. 456, 460-61, 100 L.Ed. 474 (1956). It is subsection (3), therefore, that governs this indirect criminal contempt proceeding.
 
 
 30
 A subpoena, obtainable as of course from the Clerk of the Court, is not of the same order as one issued by a judicial officer in the resolution of a specific dispute. Nevertheless, for purposes of this appeal we assume section 401(3) extends to subpoenas. See Fed.R.Civ.P. 45(f).[3] See also Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 821, 107 S.Ct. 2124, 2145, 95 L.Ed.2d 740 (1987) (Scalia, J., concurring in judgment) (courts empowered to prosecute for contempt "those who ... disobey orders necessary to the conduct of [their] business (such as subpoenas)"); United States v. Bryan, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950) (subpoena "not invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of the chase"); Fisher v. Marubeni Cotton Corp., 526 F.2d 1338, 1340 (8th Cir.1975) ("A subpoena is a lawfully issued mandate of the court issued by the clerk thereof").
 
 
 31
 In construing section 401(3), the Supreme Court stated, "In contrast to the judicial restrictions imposed on the contempt power exercisable under the clauses now found in subdivisions (1) and (2) of Sec. 401, we find no case suggesting that subdivision (3) of Sec. 401, before us here, is open to any but its obvious meaning." Green v. United States, 356 U.S. 165, 172, 78 S.Ct. 632, 637, 2 L.Ed.2d 672 (1958). Insofar as the statute reiterates the power of the court to punish "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command," it confirms the existence of the court's contempt authority. Left unanswered, however, are such questions as requisite intent, whether the challenged conduct must actually disrupt or obstruct the court's business, and whether the conduct must be found to be contumacious.
 
 
 32
 Discussion of the elements of obstruction and disruption are generally found in cases falling under subsection (1) both because "obstruct[ion] ... of justice" is specifically mentioned in that provision, and because the adjudicatory proceedings are often summary in nature.[4] We need not decide whether an actual obstruction need be shown to sustain the conviction here, although the absence of that element may have some significance in a given fact situation. Cf. United States v. Martin, 525 F.2d 703, 709 (2d Cir.) (obstruction of justice requirement in Sec. 401(1) not carried over to Sec. 401(3)), cert. denied, 423 U.S. 1035, 96 S.Ct. 570, 46 L.Ed.2d 410 (1975).
 
 
 33
 The element of willfulness, however, is an essential component of the crime and distinguishes civil from criminal contempt. See McComb v. Jacksonville Paper Co., 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949). The Court of Appeals for the Seventh Circuit elaborated on this point in United States v. Greyhound Corp., 508 F.2d 529, 531 (7th Cir.1974), stating, "Willfulness is, of course, an element of criminal contempt and must be proved beyond a reasonable doubt." But "[w]illfulness, for the purpose of criminal contempt, does not exist where there is a '[g]ood faith pursuit of a plausible though mistaken alternative.' " Id. at 532 (quoting In re Brown, 454 F.2d 999, 1007 (D.C.Cir.1971)). "To provide a defense to criminal contempt," the Court determined, "the mistaken construction must be one which was adopted in good faith and which, given the background and purpose of the order, is plausible." Id. Of course, the more prudent course for one who has doubts as to his obligations under an order is to "petition the court for a clarification or construction of that order." Id.
 
 
 34
 The analysis in Greyhound Corp. relied on In re Brown, 454 F.2d 999 (D.C.Cir.1971), an oft-cited criminal contempt case. In Brown, the Court of Appeals for the District of Columbia Circuit held: "Knowledge that one's act is wrongful and a purpose to nevertheless do the act are prerequisites to criminal contempt, as to most other crimes. Good faith pursuit of a plausible though mistaken alternative is antithetical to contumacious intent, however unimportant it may be in the context of civil contempt." Id. at 1007 (footnotes omitted).[5]
 
 
 35
 The mere failure to comply with a subpoena upon its receipt, without more, is not in all cases enough to sustain a conviction for criminal contempt. "[T]he crime of criminal contempt requires a specific intent to consciously disregard an order of the court." United States v. Berardelli, 565 F.2d 24, 30 (2d Cir.1977) (quoting United States v. Patrick, 542 F.2d 381, 389 (7th Cir.1976), cert. denied, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977)).
 
 
 36
 Moreover, Messrs. Boylan and Minella were not subject to the subpoena; their alleged dereliction was in instructing Petner not to appear. On appeal the attorneys do not seem to argue that they are in any different position with respect to contempt liability than the witness whom they advised. Thus, in the posture in which the case reaches us, the attorneys' advice presumably would subject them to potential criminal liability for aiding and abetting in the failure to obey the subpoena.
 
 
 37
 The fusion of contempt liability of a witness and the counseling attorney may not be the rule in every circumstance, however. In Maness v. Meyers, 419 U.S. 449, 467-68, 95 S.Ct. 584, 595-96, 42 L.Ed.2d 574 (1975), the Court held that an attorney who had in good faith raised a Fifth Amendment claim on behalf of his client could not be adjudged guilty of criminal contempt even if the advice given proved incorrect.
 
 
 38
 The Court's decision in Maness reflects the reasoning of In re Watts & Sachs, 190 U.S. 1, 29, 23 S.Ct. 718, 725, 47 L.Ed. 933 (1903), where Chief Justice Fuller wrote, "In the ordinary case of advice to clients, if an attorney acts in good faith and in the honest belief that his advice is well founded and in the just interests of his client, he cannot be held liable for error in judgment." Reviewing the contempt convictions on a habeas corpus petition, the Court queried:
 
 
 39
 "What evidence is there that these attorneys, or either of them, gave any advice or took any action in bad faith, not in the honest discharge of their duty as counsel, but with the deliberate intent to have the Federal court set at defiance [of the state court] and its orders treated with contempt?"
 
 
 40
 Id. at 32, 23 S.Ct. at 726. Concluding that there was no such evidence, the Court set aside the convictions.
 
 
 41
 Without citing or referring to Watts, the Court of Appeals for the Ninth Circuit in Leber v. United States ex rel. Fleming, 170 F. 881 (9th Cir.1909), affirmed the contempt conviction of an attorney who counseled a witness not to appear despite service of a subpoena. That decision is somewhat questionable because the attorney had based the advice to his client on a belief that the subpoena was invalid. In addition, the trial judge excluded testimony of a number of lawyers opining that the subpoena was invalid, evidence that could have demonstrated the accused attorney's good faith. Nevertheless, the Court of Appeals, making much of the point that the attorney failed to test the legitimacy of the subpoena by submitting the question to the court, held that advising against compliance exhibited a "spirit of contemptuous resistance to the order and process of the court." Id. at 890. The fact that the witness upon being so counseled fled from the scene to a place 350 miles away did not help his lawyer's cause.
 
 III.
 
 42
 We come then to an evaluation of the evidence in this case. As noted earlier, guilt for the contempt conviction must be established beyond a reasonable doubt. There is little, if any, dispute over the facts in this relatively routine discovery matter. When Rollins refused to produce its employee Petner for a deposition, plaintiff subpoenaed him. Before the scheduled date, Rollins moved for a dismissal of the action, and requested a stay of discovery. Boylan and Minella courteously informed plaintiff's counsel of their objection in advance to avoid expense and inconvenience.
 
 
 43
 After Petner did not appear on the date set in the subpoena, plaintiff moved for an order compelling the witness to attend, a motion the district court denied, apparently believing that such an order would be redundant.
 
 
 44
 The uncontradicted and documentary evidence establishes that the attorneys brought their objection to discovery to the court before the day set for the witness' appearance. Their advice that he not appear, therefore, was not intended to be an outright, continuing refusal to comply, but only to preserve their objection to discovery until such time as the court either denied the motion to dismiss the action, or refused to stay discovery. Had the witness obeyed the subpoena before the court ruled on Rollins' objections, its arguments would have become moot.[6]
 
 
 45
 Although Messrs. Boylan and Minella did not meticulously follow the procedural rules, their conduct was neither defiant nor disrespectful. Their free-wheeling methods neither improperly delayed the litigation, nor unduly imposed unnecessary burdens on the court. The net result of their action--a delay in discovery until the court could rule on their contention--was no different than that which would have occurred had a more scrupulous adherence to the rules been observed.
 
 
 46
 It has some significance too that plaintiff, seeking only that discovery proceed, was interested in an order compelling attendance of the witness, rather than criminal contempt convictions against the attorneys. As plaintiff's counsel urged upon the court at the show cause hearing, "Your Honor, I really wish ... that the witness would honor the subpoena, and we can get on with discovery in this matter.... [M]y only wish is that we complete discovery in this matter." Had the court granted the plaintiff's motion to compel attendance, or issued a stay pursuant to the defendant's request, the present case would not have arisen.
 
 
 47
 This case grows out of a routine discovery dispute of the type foreseen by the drafters of the Federal Rules of Civil Procedure. Rule 37(a) enables a party to obtain discovery by applying the court for an order. Rule 26(c)(1) provides that on motion of a party the court may enter a protective order barring discovery. Rule 45(b) permits the quashing of a subpoena directing attendance for production of documents "upon motion made promptly and in any event at or before the time specified in the subpoena."
 
 
 48
 The district court properly criticized the failure to observe the procedures provided in the rules. Nevertheless, counsel's unorthodox methods were intended to comply with the spirit, however far they strayed from the letter of the rules. It cannot be said that the alternative action pursued by Boylan and Minella, albeit mistaken, was implausible or unreasonable. Their reliance on an unwritten, unadopted practice, and their obliviousness to the possibility of using a quash motion do not amount to evidence of wrongful intent or choice between proper and contumacious means.
 
 
 49
 Moreover, counsel did not conceal facts from the court, nor did their actions place them in a better position to receive favorable consideration of their request than had they followed proper procedures. The attorneys' conduct, although hardly praiseworthy, does not establish beyond a reasonable doubt criminal willfulness to disobey or resist a lawful order of the court.
 
 
 50
 Yet one more matter need be addressed. In Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), the Supreme Court reiterated a suggestion it had previously made that "when confronted with a witness who refuses to testify, a trial judge should first consider the feasibility of prompting testimony through the imposition of civil contempt, utilizing criminal sanctions only if the civil remedy is deemed inadequate." Id. at 801, 107 S.Ct. at 2134 (citing Shillitani v. United States, 384 U.S. 364, 371 n. 9, 86 S.Ct. 1531, 1536 n. 9, 16 L.Ed.2d 622 (1966)).
 
 
 51
 Our full Court in United States v. North, 621 F.2d 1255, 1261 n. 9 (3d Cir.) (in banc), cert. denied, 449 U.S. 866, 101 S.Ct. 199, 66 L.Ed.2d 84 (1980), expressed doubt as to whether Shillitani requires trial judges to explicitly state that civil contempt had been considered before beginning a criminal contempt proceeding. A panel of this Court subsequently noted that uncertainty in In re Grand Jury Proceedings Harrisburg Grand Jury 79-1, 658 F.2d 211, 217-18 (3d Cir.1981). We consider our previous statement in North as directed only to the issue of whether the trial judge must state on the record that the lesser alternative was considered, and do not read it as taking issue with the policy articulated in Shillitani.
 
 
 52
 In any event, the Supreme Court's repetition of its Shillitani recommendation in Young gives additional force to the admonition. We therefore urge the district courts in this Circuit, in giving effect to the principle of invoking only "the least possible power adequate to the end proposed," Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 231, 5 L.Ed. 242 (1821), to consider the imposition of civil contempt sanctions before resorting to criminal contempt.
 
 
 53
 As we have stated, "The sole purpose of proceedings for contempt is to give our courts the power effectively to protect the rights of the public by insuring that the administration of justice shall not be obstructed or prevented." United States v. Proffitt, 498 F.2d 1124, 1128 (3d Cir.) (quoting Morris v. Crown Office, [1970] 2 W.L.R. 792, 801 (Salmon, L.J.)), cert. denied, 419 U.S. 1002, 95 S.Ct. 320, 42 L.Ed.2d 277 (1974).
 
 
 54
 Criminal contempt, more specifically, is reserved for those instances where the court must vindicate its authority. Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 441, 31 S.Ct. 492, 498, 55 L.Ed. 797 (1911); McDonald's Corp. v. Victory Invs., 727 F.2d 82, 86 (3d Cir.1984); Latrobe Steel Co. v. United Steelworkers, 545 F.2d 1336, 1343 (3d Cir.1976). Such a situation was not present here, where the lawyers requested the court to resolve a disputed discovery matter.
 
 
 55
 The judgments of contempt will be reversed and the charges dismissed.
 
 
 56
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge, concurring.
 
 
 57
 I agree with the majority's analysis and result, but I write separately to emphasize the importance of Federal Rule of Criminal Procedure 42(b), which requires that notice and hearing be given in every case where the contempt may not be summarily punished. Clearly, the dictates of Rule 42(b) were not followed in this case, as the attorneys were never on notice, until the very end of the contempt hearing, that they were in jeopardy of being held in contempt. As we have previously observed, "[d]ue process requires that, before one is subjected to the court's contempt power, one is entitled to notice that he is being so charged." Remington Rand Corp.-Delaware v. Business Systems, Inc., 830 F.2d 1256, 1258 (3d Cir.1987). The notice requirement is not simply a procedural nicety; its practical importance is evident in this case. Had the attorneys known that they were in danger of being held in criminal contempt, they could have taken basic steps to protect their rights, such as retaining their own counsel or presenting more cogent arguments "relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed." Cooke v. United States, 267 U.S. 517, 537, 45 S.Ct. 390, 395, 69 L.Ed. 767 (1925).[1]
 
 
 58
 As to the substance of the present criminal contempt adjudication, I note that giving bad legal advice is not the equivalent of contumacious conduct. If the $500.00 fine had been imposed as civil sanctions for the reimbursement of counsel fees caused by appellants' improvident advice, I would have affirmed such sanctions, or even a harsher civil penalty. Cf. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam) (affirming dismissal of antitrust action because of plaintiffs' bad faith discovery conduct). However, when judges--even wise and sensitive judges--move from the civil to the criminal process to vindicate what they perceive as exceedingly grievous conduct of counsel, the judge must be scrupulously careful to protect the alleged contemnors' procedural and substantive rights. Even in those rare instances when a judge must sentence lawyers to criminal contempt without prior notice pursuant to Federal Rule of Criminal Procedure 42(a), the lawyers' conduct must establish beyond a reasonable doubt the criminal willfulness to disobey or resist a court order. Commonwealth of Pennsylvania v. Local Union 542, Int'l Union of Operating Engineers, 552 F.2d 498, 510 (3d Cir.1977), cert. denied, 434 U.S. 822, 98 S.Ct. 67, 54 L.Ed.2d 79 (1977). In my view, the record in this case does justify a significant civil sanction but it does not warrant the draconian remedy of criminal contempt.
 
 
 59
 SLOVITER, Circuit Judge, concurring in the judgment.
 
 
 60
 I agree with the dissent's analysis that a subpoena is a court order, and an attorney's advice that it should be disregarded carries with it the necessary willfulness to support a judgment of criminal contempt. However, I join in the judgment of the majority reversing the judgment here because under the circumstances of this case, I believe that it was an abuse of discretion for the district court to have imposed a criminal contempt order. I believe that the imposition of the criminal contempt order here without prior notice to the appellants constitutes plain error. Furthermore, there were ample and adequate civil sanctions that could have been imposed and that would have fully vindicated the authority of the court. As I read the opinions of my colleagues, nothing precludes the plaintiff from invoking the procedures of Rule 37 to seek reimbursement for the expenses incurred by it in connection with the proceedings arising out of the improper advice given by the appellants with respect to the subpoena.
 
 
 61
 SCIRICA, Circuit Judge, with whom STAPLETON, GREENBERG and COWEN, Circuit Judges join, dissenting.
 
 
 62
 The court's opinion holds that where seasoned lawyers have instructed a witness to disobey a valid and unambiguous court order, the court cannot find that they had " '[k]nowledge that [their] act [was] wrongful and a purpose to nevertheless do the act.' " At p. 609. I find this a startling proposition, one likely to work great mischief.[1]
 
 
 63
 I doubt that there is any lawyer in the United States who does not know that a subpoena is a court order and remains such until vacated or discharged by the court. Clearly, Messrs. Minella and Boylan were not ignorant on this score.[2] If they had really believed that under some New Jersey "loose practice" the filing of their motion to dismiss had caused the court's order to evaporate,[3] they would have had no occasion to consider filing a protective order or to include a request for a stay of discovery in a footnote of the brief supporting their motion to dismiss.
 
 
 64
 If, as the court holds, there is insufficient evidence in this case to support a finding that Messrs. Minella and Boylan willfully resisted the court's lawful order within the meaning of 18 U.S.C. Sec. 401(3),[4] I am at a loss to understand how an offense under that section can be proven. Because the court's decision undermines the statute and leaves district judges without authority to insist upon compliance with the orders of their courts, I respectfully dissent.
 
 
 65
 The majority focuses on the negligible delay caused by the attorneys' conduct, as well as the court's alternatives to the criminal contempt remedy. These factors may be relevant when evaluating whether a court's decision to punish a contempt was an appropriate exercise of its discretion. They are not indicative, however, of whether an alleged contemnor acted with the willfulness necessary for criminal contempt.
 
 
 66
 In Maness v. Meyers, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975), the Supreme Court reversed a contempt order against an attorney who, in good faith, advised a witness to disobey a subpoena duces tecum on fifth amendment grounds. Id. at 465, 95 S.Ct. at 594. Nonetheless, the Court reiterated the basic rule that all court orders and judgments must be complied with promptly and that those who privately determine the law and refuse to obey a court order risk contempt, even if the order ultimately is ruled incorrect. Id. at 458, 95 S.Ct. at 591. The Court emphasized that the result in Maness differed from the general rule because the attorney had advised his client to resist the subpoena on fifth amendment grounds. See id. at 460-61, 95 S.Ct. at 592. The privilege against self-incrimination would be meaningless, the Court concluded, if attorneys faced punishment for advising their clients to assert the privilege. Id. at 465-66, 95 S.Ct. at 594-95.
 
 
 67
 Appellants attempt to distinguish Commonwealth of Pennsylvania v. Local Union 542, 552 F.2d 498 (3d Cir.), cert. denied, 434 U.S. 822, 98 S.Ct. 67, 54 L.Ed.2d 79 (1977), in which we upheld a criminal contempt citation against an attorney who had been warned seven times that his courtroom conduct was bordering on contempt, thus providing the attorney with ample reason to know that a contempt citation would be imposed if he did not desist. See id. at 502. I do not read Local Union 542 necessarily to require the trial judge to place an attorney on notice that his conduct could result in a contempt citation. A warning is not the only basis on which an attorney would have reason to know that his conduct is wrongful.
 
 
 68
 Federal Rule of Civil Procedure 45(f) provides: "Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued." Messrs. Minella and Boylan instructed Steven Petner to disobey a valid order of the court, a volitional act by experienced attorneys. The district court did not believe their good faith defense. The issue before us is whether there was sufficient evidence to support its finding beyond a reasonable doubt that their conduct constituted willful disobedience of a court order. I believe that there was.
 
 
 69
 The remaining issue is whether the district court abused its discretion in imposing contempt in this case. To vindicate its authority, I believe the district court could have imposed a lesser sanction or even could have treated this matter as a breach of the discovery rules and imposed similar sanctions under Fed.R.Civ.P. 37. Nevertheless, the action taken by the district court was within its authority and I cannot say it constituted an abuse of discretion.
 
 
 
 [1]
 An examination of Judge Peck's impeachment and trial appears in Nelles & King, Contempt by Publication in the United States, 28 Colum.L.Rev. 401, 423-30 (1928)
 
 
 [2]
 The 1831 law underwent minor revisions before taking its current form. See Rev.Stat. Sec. 725, 137-38 (1875); Act of Mar. 3, 1911, ch. 231, Sec. 268, 36 Stat. 1163; 28 U.S.C. Sec. 385 (1940) (current version at 18 U.S.C. Sec. 401)
 
 
 [3]
 Federal Rule of Civil Procedure 45(f) reads: "Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued."
 
 
 [4]
 In a summary criminal contempt proceeding, the judge acts as prosecutor and fact finder, and consequently, courts have expressed concern that the procedural rights of the alleged contemnor be protected. In re McConnell, 370 U.S. 230, 234, 82 S.Ct. 1288, 1291, 8 L.Ed.2d 434 (1962) ("before the drastic procedures of the summary contempt power may be invoked to replace the protections of ordinary constitutional procedures there must be an actual obstruction of justice"); In re Michael, 326 U.S. 224, 227, 66 S.Ct. 78, 79, 90 L.Ed. 30 (1945); Commonwealth of Pennsylvania v. Local Union 542, 552 F.2d 498, 509 (3d Cir.), cert. denied, 434 U.S. 822, 98 S.Ct. 67, 54 L.Ed.2d 79 (1977)
 
 
 [5]
 For an earlier discussion of the intent requirement and the good faith defense, see Comment, The Intent Element in Contempt of Injunctions, Decrees and Court Orders, 48 Mich.L.Rev. 860 (1950)
 
 
 [6]
 Had defendant produced Petner at the time and place specified and thereafter immediately terminated the deposition pursuant to Fed.R.Civ.P. 30(d), the court would have been called upon to rule on the objection to discovery. Following that procedure would have been more onerous to all concerned, but is permitted by the rules, and would have shielded counsel from criminal contempt charges. Taking that action without cause, however, could have exposed counsel to sanctions under Rule 37(a)(4)
 
 
 [1]
 I note that by representing themselves, appellants may have deprived themselves of the detachment that is necessary to protect proficiently their own rights. In particular, counsel's waiver of the procedural argument is incomprehensible to me. I do not believe this waiver would have been made by counsel more detached from the fray and less involved in the obvious embarrassment of this incident. In any event, as the majority notes, At 607, the "procedural irregularities" in the present action may have constituted plain error
 
 
 [1]
 I find equally startling, though more benign, the suggestion that a lawyer brings an issue before the court by burying a request in a footnote of a brief on another subject. See p. 611
 
 
 [2]
 If they had been uninformed concerning this "hornbook law" before service of the subpoena, they could not have remained ignorant thereafter. As was clear from its face, the subpoena was issued by the court, "commanded" Mr. Petner to appear, and cautioned that "[t]his subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court."
 
 
 [3]
 Mr. Boylan described the loose practice as follows:
 We do it in New Jersey. With the consent of counsel, we will file a Motion to Dismiss a complaint for lack of jurisdiction, and discovery will be stayed.
 I note that Messrs. Minella and Boylan do not claim that the district court was without jurisdiction in this case, and they knew by virtue of the subpoena that there was no "consent of counsel" to a stay of the deposition.
 
 
 [4]
 As I read the hearing transcript, the district court found that Messrs. Minella and Boylan knew they had no right to resist the court's order and, nevertheless, deliberately chose to do so. The majority apparently reads the record in the same way. If there were any doubt about whether such a finding was made by the district court, the appropriate response would be a remand for more explicit factfinding