**UNITED STATES of America,**

v.

**Thomas C. FRANCHI, Defendant.**

**Civ. A. No. 90–2102.**

United States District Court,
W.D. Pennsylvania.

Nov. 1, 1991.

Ryan R. Kennedy, Asst. U.S. Atty., Pittsburgh, Pa., for plaintiff.

Neil Price, Johnstown, Pa., for defendant.

## FINDINGS OF FACT

LEWIS, District Judge.

1. On February 12, 1991, the Honorable Glenn E. Mencer of this court entered an order preliminarily enjoining defendant Thomas C. Franchi from "acting as an income tax preparer within the meaning of 26 U.S.C. § 7701(a)(36)"; "further engaging in conduct subject to penalty under 26 U.S.C. § 6694"; and "interfering with and/or impeding the proper administration of the Internal Revenue laws."

2. More specifically, Mr. Franchi was enjoined in part from "preparing for compensation, or employing others to [prepare]

for compensation, any federal tax return or substantial portion thereof, or any claim for refund or substantial portion thereof."

3. As part of the basis for the injunction, the court determined that Mr. Franchi had engaged in fraudulent and deceptive conduct in preparing federal income tax returns.

4. Mr. Franchi's attorney and counsel for the government agreed that the injunction did not prohibit him from preparing state and local income tax returns or from collecting information to use in preparing federal income tax returns in the future, should the injunction be lifted.

5. All parties were clear that the injunction prevented Mr. Franchi from preparing federal income tax returns, as noted above, however.

6. Mr. Franchi was aware of this as of February 13, 1991, when he spent about a half-hour discussing the injunction with his attorney.

7. Mr. Franchi received a copy of the court's opinion and order in late February, 1991.

8. On March 1, 1991, Mr. Franchi told Anthony Hovanec, chief of police for Beaver Boro, Pennsylvania, that he could not prepare federal income tax returns for clients.

9. In early March 1991, Clarence R. Smith visited Mr. Franchi's office so that Mr. Franchi could prepare his state and federal income taxes for 1990.

10. Mr. Smith had visited Mr. Franchi regarding his taxes earlier in the year, but he did not give Mr. Franchi his final income figures until the visit in March.

11. Mr. Smith discussed his taxes and left his tax information with Mr. Franchi in March.

12. A completed federal income tax return for the year 1990 was delivered to Mr. Smith's home shortly thereafter.

13. On April 4, 1991, Mr. Smith paid Mr. Franchi $30.00 for preparing his state and federal income tax returns for the year 1990.

14. In March, 1991, Stephen Krizan Jr. met with Mr. Franchi so that Mr. Franchi could prepare his state and federal income tax returns for the year 1990.

15. Mr. Franchi did not advise Mr. Krizan that he could not prepare his federal income tax return.

16. Mr. Franchi prepared Mr. Krizan's federal income tax return for 1990 sometime in March, 1991.

17. Mr. Krizan paid Mr. Franchi $60.00 for preparing his tax returns.

18. Also in March, 1991, Ronald E. Durham and his wife visited Mr. Franchi so that Mr. Franchi could prepare their federal and state income tax returns.

19. Mr. Franchi prepared their federal and state income tax returns.

20. Mr. Durham paid Mr. Franchi for this service with a blank check, which bore the imprinted number of 2086.

21. Mr. Franchi inserted all of the information on Mr. Durham's check except for the signature.

22. Although Mr. Durham gave Mr. Franchi this check in March, it was dated February 10, 1991.

23. The Durhams were not in the state of Pennsylvania in February, 1991.

24. Checks numbered 2084 and 2085 were dated March 18, 1991 and March 21, 1991 respectively, and checks numbered 2087 and 2088 were dated March 26, 1991.

25. The 1990 federal income tax return of Ronald Durham, prepared in March, 1991, bears the name of Thomas C. Franchi as the paid preparer but bears a preparation date of February 10, 1991.

26. In April, 1991, Lucille A. Rohm contacted Mr. Franchi to prepare her state and federal income tax return for the year 1990.

27. Mr. Franchi did not advise Ms. Rohm that he could not prepare her federal income tax return.

28. Mr. Franchi prepared Ms. Rohm's federal income tax return for 1990 sometime during April, 1991.

29. Ms. Rohm paid Mr. Franchi $95.00 for preparing her 1990 state and federal income tax returns.

30. In April, 1991, John Matthews visited Mr. Franchi in order to provide Mr. Franchi with information to use in preparing his 1990 state and federal income tax returns.

31. Mr. Franchi prepared Mr. Matthews' federal income tax return sometime thereafter, and Mr. Matthews paid him for this service.

32. Mr. Franchi denied preparing Mr. Matthews', Ms. Rohm's and Mr. Krizan's 1990 federal income tax returns. He claimed that he prepared Mr. Smith's and Mr. Durham's 1990 federal income tax returns before February 12, 1991.

33. Government agents learned of Mr. Franchi's income tax preparation activities by interviewing Mr. Franchi's clients as they came out of his office.

34. They were investigating suspected violations of the injunction and had reason to believe that Mr. Franchi could be fraudulently preparing tax returns.

35. Internal Revenue Service special agent John M. Douglass met with Mr. Franchi on April 13, 1991 in order to discuss preparation of a 1990 federal income tax return. Mr. Douglass was wearing a monitoring device.

36. Mr. Franchi suspected that Mr. Douglass was a government agent and decided to "play along" with the agent during their conversation.

37. On June 19, 1991, the government filed an application for a rule to show cause why the defendant should not be held in criminal contempt.

38. On October 9 and 10, 1991, this court heard testimony and received evidence regarding the alleged criminal contempt.

## CONCLUSIONS OF LAW

The government's allegations of criminally contumacious activity on the part of defendant Thomas C. Franchi are quite serious. Mr. Franchi is accused of willfully violating a court order. At various times between June 19, 1991, when the government filed its application for an order to show cause, and October 10, 1991, when the hearing was concluded, Mr. Franchi has asserted that the government impermissibly used criminal investigative techniques in probing suspected violations of a civil injunction, managing thereafter to transform a civil lawsuit into a criminal proceeding.

■ Any contention that the court cannot hold Mr. Franchi in criminal contempt for violating a court order just because that order arose from a civil suit is clearly meritless. The court has the power to hold a person in either civil or criminal contempt for violations of an order. *Cf. Waste Conversion, Inc. v. Rollins Environmental Services (NJ), Inc.*, 893 F.2d 605 (3d Cir. 1990).

Instead, Mr. Franchi contends that this case should be dismissed for lack of due process stemming from allegedly outrageous government conduct. He apparently contends that the Internal Revenue agents who investigated this matter improperly used electronic methods of recording conversations when investigating whether he was preparing federal income tax returns in violation of the injunction.

Agent Douglass wore a bodywire during a meeting with Mr. Franchi at Mr. Franchi's office. Testimony indicated that at that time, agent Douglass was investigating suspected violations of the injunction. Agent Douglass further acknowledged that incident to his investigation was a concern about possible fraudulent preparation of tax returns on Mr. Franchi's part.

Because IRS agents had been conducting surveillance of his office, Mr. Franchi suspected that agent Douglass was from the Internal Revenue Service when agent Douglass visited him. Wisely or not, Mr. Franchi as a result of this decided to "play along" with the agent and discuss tax matters with him during their meeting. Given that, the court will not credit the tape-recorded evidence. The court has not tak-

en agent Douglass' testimony into account at all in reaching its decision.[1]

Even discounting agent Douglass' testimony, however, the government has more than amply proved beyond a reasonable doubt that Mr. Franchi violated the injunction. Testimony of five other government witnesses demonstrated that Mr. Franchi did indeed prepare their federal income tax returns after February 12, 1991. The court finds that testimony, rather than Mr. Franchi's allegations that those witnesses were lying, credible. There is no need to rely upon, indeed even to consider, agent Douglass' testimony in reaching this conclusion.

The court holds as follows:

1. Title 18, United States Code, section 401 confers upon this court the "power to punish by fine or imprisonment, at its discretion ... [d]isobedience or resistance to its lawful ... order."

2. Pursuant to this statute, the court may hold a person in either civil or criminal contempt. *United States v. North,* 621 F.2d 1255 (3d Cir.), *cert. denied,* 449 U.S. 866, 101 S.Ct. 199, 66 L.Ed.2d 84 (1980).

3. Criminal contempt sanctions are imposed to vindicate the authority of the court or of the public. *Local 28 Sheet Metalworkers Int'l Assoc. v. Equal Employment Opportunity Commission,* 478 U.S. 421, 443, 106 S.Ct. 3019, 3032, 92 L.Ed.2d 344, 367 (1986).

4. Defendant received adequate notice of the criminal nature of the matter currently before the court and has been afforded criminal procedural protections such as the opportunity to file pretrial motions. Fed.R.Crim.P. 42(b).

5. Criminal contempt must be proven beyond a reasonable doubt. *Waste Conversion,* 893 F.2d at 607.

6. To prove that the defendant acted in criminal contempt, the government must show that the defendant willfully violated a lawful court order, of which he had notice. *Id.*

7. "Willfulness" in this context means knowing that one's act is wrongful and having a purpose nevertheless to do the act or acts at issue. *Id.*

8. Mr. Franchi had actual knowledge of the injunction and understood that he was enjoined from, *inter alia,* preparing federal income tax returns for compensation.

9. Mr. Franchi nevertheless prepared federal income tax returns for compensation for at least some of his clients after the injunction was entered.

10. In so doing, Mr. Franchi willfully violated a lawful order of this court on more than one occasion.

11. The government has proven beyond a reasonable doubt that Mr. Franchi acted in criminal contempt.

12. Mr. Franchi's deceit in attempting to conceal the true date of preparation of Mr. Durham's and Mr. Smith's tax returns enhances the flagrancy of his contempt.

13. This court will now proceed to "enter an order fixing [the defendant's] punishment" in accordance with Fed.R.Crim.P. 42(b).

---

1. Mr. Franchi claims that the government's conduct in this case rose to the level at which "the agents create rather than uncover crime, inveigling the rather unwilling to join into activity of their creation." Defendant's brief at p. 5. There is no evidence of record which indicates that Mr. Franchi was entrapped, either into preparing the federal income tax returns he prepared, or into discussing federal income tax preparation with agent Douglass. Concerning Mr. Franchi's assertion that the contempt allegation should be dismissed because of a deprivation of due process, the United States Court of Appeals for the Third Circuit has admonished that "a successful due process defense must be predicated on intolerable government conduct which goes beyond that necessary to sustain an entrapment defense." *United States v. Jannotti,* 673 F.2d 578, 607 (3d Cir.1982). The court must "exercise scrupulous restraint" before denouncing law enforcement conduct as constitutionally unacceptable and will not denounce the agent's conduct in this case. *Id.*