OPINION OF THE COURT
ALDISERT, Circuit Judge.
These are appeals from an order of civil contempt and an order imposing attorneys’ *1257 fees as a partial contempt sanction. We are confronted with the question whether, before he may be held in civil contempt, a bankruptcy reorganization trustee of a corporation must be given notice that he personally stands in jeopardy of being held in contempt, notwithstanding that he has actual knowledge of contempt proceedings instituted against the corporation he represents. Because we answer this question in the affirmative, we will reverse the contempt and attorneys’ fees orders to the extent that they apply to appellant.
I.
These appeals by J.A.M. Banning arise from facts developed in related appeals before this court. See Remington Rand Corp. v. Business Systems, Inc., 830 F.2d 1260 (3d Cir.1987); Remington Rand Corp. v. Business Systems, Inc., 830 F.2d 1274 (3d Cir.1987). We need not recount those facts in their entirety, but will set forth only adjudicative facts necessary to dispose of the present matters before us.
Appellant Banning, a Dutch citizen, was the trustee of Business Systems, Inc., B.V. (hereinafter BSI B.V.), a Dutch typewriter manufacturing company. He was appointed by a Dutch court as trustee of BSI B.V. because it was in “suspension of payments” in the Netherlands, the Dutch equivalent to reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 1101-1174. On September 6, 1984, the United States District Court for the District of New Jersey determined that BSI B.V. and its United States affiliate, BSI Office Equipment, Inc. (hereinafter BSI U.S.), were liable to the Remington Rand Corporation, a United States corporation, for misappropriating Remington’s trade secrets in the know-how to produce an electric typewriter. By an order issued that same day, the district court imposed a constructive trust on certain of BSI B.V.’s assets in Holland. Remington later became dissatisfied with the degree of BSI B.V.’s and BSI U.S.’s compliance with that order.
On Remington’s application, the district court issued on October 15, 1984, an order to BSI B.V. and BSI U.S. commanding them “to show cause why a citation of contempt should not be entered, against defendants for failure to comply with this Court’s Order of September 6, 1984____” App. at 1624-25. Banning was not mentioned by name or by title in the order to show cause. Nevertheless, on January 21, 1985, the district court held Banning in contempt of the September 6 order. On February 6, 1985, the district court ordered that a warrant be issued for Banning’s arrest and that he be held liable with BSI B.V. for attorneys’ fees incurred by Remington in seeking to enforce the September 6 order. Banning appeals from the district court’s final judgment entered on July 9, 1986, and challenges the contempt citation. He also appeals from the district court’s order of September 24,1986, that held Banning and BSI B.V. liable to Remington for $82,685.20 in attorneys’ fees.
II.
Banning and amicus, the Government of the Kingdom of the Netherlands, raise a panoply of defenses to the contempt order. We need not address them all, however, for we consider the failure to name Banning as a respondent in the order to show cause to be dispositive of his appeals. Banning contends that, because he was not named in the district court’s order to show cause or otherwise informed that he was a potential contemnor of the September 6 order, he was denied due process under the fourteenth amendment to the United States Constitution. We agree. Because this question involves the application and interpretation of legal precepts, our standard of review is plenary. United States v. Adams, 759 F.2d 1099, 1106 (3d Cir.), cert. denied, 474 U.S. 906, 106 S.Ct. 275, 88 L.Ed.2d 236 (1985).
A.
Preliminarily, we observe that although the district court characterized Banning’s contempt as civil in nature, we must make an independent determination of that *1258 issue. Pittsburgh-Des Moines Steel v. United Steelworkers, 633 F.2d 302, 311 (3d Cir.1980). After examining the record, we are convinced that Banning was indeed held in civil contempt. The contempt proceedings were instituted by Remington, they were not captioned or conducted separately from the underlying action, and the sanctions imposed were designed to coerce Banning and to compensate Remington. See Latrobe Steel Co. v. United Steelworkers, 545 F.2d 1336, 1342-44 (3d Cir.1976).
B.
Due process requires that, before one is subjected to a court’s contempt power, one is entitled to notice that he is being so charged. In re Oliver, 333 U.S. 257, 275, 68 S.Ct. 499, 508, 92 L.Ed. 682 (1948). This requirement applies whether the contempt threatened is civil or criminal. In re Grand Jury Proceedings (Campaigner Publications, Inc.), 795 F.2d 226, 234 (1st Cir.1986), cert. denied, —U.S.-, 107 S.Ct. 950, 93 L.Ed.2d 999 (1987); see In re Grand Jury Investigation (Braun), 600 F.2d 420, 423 n. 7 (3d Cir.1979). To evaluate whether the notice given to Banning in this case was sufficient, we look to the notice requirements in Rule 42(b), F.R. Crim.P., Braun, 600 F.2d at 423 n. 7; Dole Fresh Fruit Co. v. United Banana Co., 821 F.2d 106, 110 (2d Cir.1987).
Rule 42(b) provides that notice must be given to an alleged contemnor, including the time and place of the contempt hearing and the essential facts constituting the contempt charged. F.R.Crim.P. 42(b). The rule also requires that the alleged contemnor be given a reasonable time to prepare his defense. Id. There is no question that Banning had actual knowledge of the contempt proceedings against BSI B.V. and BSI U.S. in the district court; no one contends to the contrary. Rather, Banning argues that he was not advised that he personally was placed in jeopardy of being held in contempt; he contends that the court papers informed him only that BSI B.V. and BSI U.S. were subject to contempt.
It bears repeating that the district court’s order to show cause did not name Banning as a potential contemnor, but referred only to the “defendants” in the underlying action. App. at 1624-25. Banning was not one of these defendants. On the third of four days of hearings in the contempt proceedings, the following colloquy ensued between the district court and counsel for Remington:
THE COURT: Mr. McConnon, this brings up a question that I wanted to address sooner or later. We might as well address it sooner.
What measure of relief would you seek from this Court in connection with a finding of contempt, and against whom?
MR. McCONNON: It goes against BSI, the BSI family.
THE COURT: All of them?
MR. McCONNON: Yes.
THE COURT: At least all of the named defendants in this case?
MR. McCONNON: Yes.
THE COURT: And I suppose Mr. Banning himself, as a result of his having intervened and taken the action he did? MR. McCONNON: I would say all those normally covered by Rule 65 of the Federal Rules of Civil Procedure, that would be the scope, and the relief would encompass the elements normally involved in an effort by a court to obtain compliance with its decrees.
Id. at 697. Assuming that Banning was a person within the scope of the district court’s September 6 order, a question we need not presently decide, the discussion set forth above could have provided Banning with some inkling that he might be held in contempt. But an inkling is not enough to subject one to potential incarceration or monetary penalties. McConnon’s response to the court’s question about Banning was ambiguous and equivocal at best. We conclude that such questionable notice, emerging from a judge-induced inquiry, and taking place on the third day of the contempt hearings, was not sufficient to meet the standards of due process or Rule 42(b), F.R.Crim.P.
*1259 C.
A situation almost identical to the one at bar recently was presented to the United States Court of Appeals for the Second Circuit in Dole Fresh Fruit Co. v. United Banana Co., 821 F.2d 106 (2d Cir.1987). There, the district court issued two orders to show cause against a corporate defendant, but did not name the corporation’s officers in either order. Id. at 108. The district court nevertheless held the officers in civil contempt for violating a previously issued preliminary injunction. Reference was made to the officers during the contempt proceedings; they had been subpoenaed to appear as witnesses; they were within the scope of the violated injunction. Id. at 109. At one point during the contempt proceedings, the trial court suggested that the officers also could be considered defendants. Id. at 109. The court of appeals, however, stated: “It is not clear on the record before us that the [officers] enjoyed either notice or reasonable opportunity to prepare a defense____ [The officers] had no means of knowing that they were going personally to be held in contempt in the [contempt] hearings.” Id. at 110. The court of appeals relied in part on this deficiency to vacate the contempt orders against the officers. Id. at 110-11.
We are impressed by the Dole court’s reasoning and adopt it here. There being no clear indication on the record in the instant case that Banning was given proper notice, we hold that the contempt and attorneys’ fees orders issued against him violated due process and Rule 42(b), F.R.Crim.P. See also Richmond Black Police Officers Ass’n v. City of Richmond, 548 F.2d 123, 126-27 (4th Cir.1977); Brotherhood of Locomotive Firemen v. United States, 411 F.2d 312, 318-19 (5th Cir.1969).
D.
Remington proffers several contentions in an attempt to persuade us to reach a different result. It first argues that Banning was given adequate notice because he is a de facto party in this case, it having been stated in a prior unpublished opinion of this court that Banning is a de facto party for the purpose of his right to appeal the contempt order. See Remington Rand Corp. v. Business Systems, Inc., Nos. 85-5151, -5657, -5706, slip op. at 13-19 (3d Cir. Dec. 30, 1985) [782 F.2d 1030 (table)] (dismissing appeal for want of appellate jurisdiction), reprinted in app. at 2622-28. We are not impressed. A determination of Banning’s de facto party status for the purpose of his right to take an appeal cannot retroactively transform him into a named defendant encompassed by the order to show cause. This is especially important given that this determination was made in an appeal that decided nothing on the merits.
Remington next argues that Banning was represented by counsel at the contempt proceedings, and that it may be inferred from his attorney’s participation that Banning was on notice that he could be held in contempt. We have several problems with this. First, it is far from clear whether Banning was indeed represented by counsel at the contempt proceedings.[1] This factor, however, is not critical. Even assuming that Banning was represented, this would not cure the deficiency arising from his not being informed in the order to show cause that he personally was threatened with contempt. There is a fundamental distinction between Banning’s being represented because he had an indirect administrative interest in the contempt proceedings, and his being represented because he was named as an alleged contemnor.
As a final argument, Remington asserts that oral notice is sufficient to forewarn one that he is in jeopardy of being held in contempt. Although this may be true as a bald proposition, see In re Grand Jury Investigation (Hartzell), 542 F.2d 166, 168 *1260 (3d Cir.1976), cert. denied, 429 U.S. 1047, 97 S.Ct. 755, 50 L.Ed.2d 762 (1977), such notice still must inform one that he personally is threatened with contempt. Because whatever oral notice Banning may have received never included the critical element that would alert him that he personally was in jeopardy, it was not sufficient.
III.
In light of our holding, the orders of contempt and attorneys’ fees will be reversed to the extent that they apply to Banning.

. On this one issue alone, the panel was subjected to a paper storm churned by counsel for Remington and Banning. For reasons best known to these distinguished counsel, they fattened the record with a plethora of supplementary letters and appendices. Although we do not doubt that the answer may be found somewhere in the six hundred-odd tendered pages, Banning’s appeals happily do not depend on its divination.