**In re Dan Kenneth BRAUN, Debtor,**

**Dan Kenneth BRAUN, Plaintiff,**

**v.**

**CHAMPION CREDIT UNION, Defendant.**

**Bankruptcy No. 3:92CV7391.**

United States District Court, N.D. Ohio, W.D.

March 11, 1993.

Daniel G. Camick, Lackey, Nusbaum, Harris, Reny & Torzewski, Phillip D. Browarsky, Law Office of Phillip Browarsky, Toledo, OH, for plaintiff.

Harland M. Britz, Britz & Zemmelman, Gordon R. Barry, Barry & Feit, Toledo, OH, for defendant.

### *MEMORANDUM OPINION*

DOWD, District Judge.

## I. INTRODUCTION

This action is an appeal from the decision of the United States Bankruptcy Court holding that a municipal court case filed by Creditor–Appellant Champion Credit Union ("Creditor–Appellant") against Debtor Dan Kenneth Braun ("Appellee") constituted an attempt to recover a discharged debt, and requiring an award of $15,000 to be paid jointly and severally by Creditor–Appellant and its attorney, Richard Shinaberry ("Attorney–Appellant"), for civil contempt and violations of Bankruptcy Rule 9011.[1]

---

1. The decision of the bankruptcy court is reported at 141 B.R. 133 (Bankr.N.D.Ohio 1992).

■ This Court has jurisdiction to hear appeals from a judgment, order or decree of a bankruptcy judge pursuant to 28 U.S.C. § 158(a). While Bankruptcy Rule 8013 states that findings of fact shall not be set aside unless clearly erroneous, it is well established that a bankruptcy court's conclusions of law are subject to *de novo* review by the district court. *In re Caldwell*, 851 F.2d 852 (6th Cir.1988). The standard by which an award of sanctions is reviewed, however, is somewhat different. The question of whether an individual's conduct was reasonable under the circumstances is a mixed question of law and fact for which *de novo* appellate review is not appropriate. *Century Products, Inc. v. Sutter*, 837 F.2d 247, 253 (6th Cir.1988). Instead, because of the lower court's more intimate knowledge of the facts of such cases, an abuse of discretion standard is proper when a district court reviews a bankruptcy court's award of sanctions. *Id.; see also In re Studio Camera Supply, Inc.*, 116 B.R. 70, 73 (E.D.Mich.1990), *citing Cooter & Gell v. Hartmarx, Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Under an abuse of discretion standard, the bankruptcy court's decision will be reversed only if the district court has a definite and firm conviction that the bankruptcy court committed clear error of judgment in a conclusion it reached; clear error of judgment has been made if a conclusion is based on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *In re Hammond*, 140 B.R. 197, 201 (S.D.Ohio 1992) (citations omitted).

## II. FACTUAL BACKGROUND

In 1981, Appellee purchased a kit to transform a 1970 Volkswagen chassis into a 1937 Jaguar automobile. In 1986, Appellee borrowed $3,500.00 from Creditor–Appellant, and pledged the converted vehicle, valued at approximately $9,000, as collateral. Appellee also held a Visa charge account with Creditor–Appellant. In late 1989, without notifying Creditor–Appellant, Appellee disassembled the converted vehicle and sold the kit for $3,500 to a buyer in Arizona. At the time of trial, Appellee still possessed the 1970 Volkswagen chassis, and kept it at his former address in Sylvania, Ohio.

On April 24, 1990, Appellee filed a voluntary petition under Chapter 7 of Title 11, United States Code. At this time, Appellee owed Creditor–Appellant $1,726.24 on the Visa account and $275.52 on the auto loan. Appellee did not list the debt to Creditor–Appellant as a secured debt in his schedules. Appellee listed on his Schedule B four automobiles, none with a value of more than $400. Further, although he had sold the kit in late 1989, Appellee did not disclose such information in answer to a question on his statement of affairs as to whether he had transferred any property in the year prior to bankruptcy. Appellee asserted that, at the time he sold the car kit, he had forgotten that Creditor–Appellant had a lien on the vehicle.

Creditor–Appellant acknowledged receiving notice from the bankruptcy court of Appellee's Chapter 7 petition. Creditor–Appellant did not, however, take advantage of any of the mechanisms within the bankruptcy proceeding for obtaining the collateral, such as attending the meeting of creditors, filing a proof of claim, filing a motion for relief from stay, filing a motion for abandonment, or filing an adversary proceeding to determine the dischargeability of a debt or to object to Appellee's discharge.

On August 27, 1990, Appellee received his discharge. On October 12, 1990, he received a letter from Attorney–Appellant stating that Attorney–Appellant had advised his client to pursue criminal prosecution if the debt were not resolved. Appellee refused to reaffirm the debt. On March 14, 1991, Creditor–Appellant, through Attorney–Appellant, filed a complaint in the Municipal Court of Toledo, Lucas County, Ohio for judgment against Appellee in the amount of $2,001.76 in compensatory damages, $5,000 in punitive damages, plus interest, attorney fees, and costs. Creditor–Appellant eventually took a default judgment in the amount $8,261.76.

Appellee filed an adversary action in bankruptcy court, alleging a violation of an automatic stay and subsequent injunction pursuant to 11 U.S.C. § 524(a)(2) ("§ 524(a)(2)"). A trial was held before the bankruptcy court. The court found that the municipal court suit was an impermissible *in personam* action against Appellee as opposed to an *in rem* action against the property itself. As such, the bankruptcy court found the suit an attempt to collect a discharged debt in violation of § 524(a)(2). The bankruptcy court awarded Appellee compensatory damages,[2] as well as sanctions for civil contempt and for violations of Bankruptcy Rule 9011 in the amount of $15,000, to be paid jointly and severally by Creditor–Appellant and Attorney–Appellant.

### III. LAW AND DISCUSSION

#### A. The § 524(a)(2) Claim

■ The first issue to be decided on appeal is whether the bankruptcy court's factual finding that Creditor–Appellant attempted to collect a discharged debt in violation of § 524(a)(2) was clearly erroneous. This Court concludes that it was not.

■ A discharge in a case under Title 11 "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). As a general rule, a discharge in bankruptcy is a defense to an entry of a monetary judgment where the debtor does nothing to impede the creditor from taking possession of the collateral. To hold otherwise would mean that a discharge would not assure the debtor of the rehabilitation and a fresh start that Congress intended. *In re Sams*, 16 B.R. 47 (Bankr.N.D.Ohio 1981). However, a valid lien survives the discharge order, and a secured creditor may take any appropriate action to execute such a lien, except an *in personam* action against the debtor. *See,*

*e.g., In re Burgin*, Case No. 90–0209 at 3, 1991 WL 378166 (Bankr.N.D.Ohio Aug. 8, 1991). Thus, a creditor may bring an *in rem* proceeding to recover the collateral, but not an *in personam* action seeking to affix a personal money judgment against a discharged debtor. *Id.*

During the proceedings before the bankruptcy court, Creditor–Appellant claimed that its municipal court action was an *in rem* action. On appeal, Creditor–Appellant characterizes the action as an attempt to collect damages for an alleged conversion that Creditor–Appellant reasonably believed took place post-petition. This Court, reviewing *de novo* the conclusion of the bankruptcy court, finds that it was neither.

Creditor–Appellant relies on *Burgin, supra,* in support of its claim that its suit was a permissible action for post-petition conversion. *Burgin* is, however, clearly distinguishable from the case at hand in several ways. First, the creditor in *Burgin* had made use of the remedies afforded in the bankruptcy proceeding, namely relief from the stay and abandonment. Creditor–Appellant did not. Additionally, the creditor in *Burgin* made several attempts, both in person and by telephone, to recover the collateral. While Creditor–Appellant made a few telephone calls regarding the Volkswagen chassis, it made no attempt to repossess it, and never took any steps within the bankruptcy court to view the collateral. The chassis was continually located at Appellee's Sylvania, Ohio address, and Appellee made no attempt to conceal it from Creditor–Appellant.

Further, in *Burgin*, the creditor was attempting to recover damages to the property at issue. In the instant case, however, it is clear that Creditor–Appellant was attempting to recover a debt due it. In *Burgin*, the creditor clearly alleged in the state court complaint that the debtor had converted the collateral for its own personal use. In the instant case, however, the complaint makes no such allegation. Moreover, the bankruptcy court made the factual finding that no conversion occurred.

---

**2.** The amount of the compensatory damages was subsequently determined by the bankruptcy court in a separate proceeding, reported at 141 B.R. 144 (Bankr.N.D.Ohio 1992).

This Court finds Creditor–Appellant's claim that the complaint was for a post-petition conversion nothing more than an after the fact justification for an impermissible *in personam* suit to recover a debt owed.

When asked at trial whether the municipal court action was *in personam* or *in rem*, Attorney–Appellant did not know. The complaint does not attempt to attach property, nor even seek the value of the collateral. It is, instead, a complaint for the precise amount of the outstanding debt owed to Creditor–Appellant, plus punitive damages. In short, the collateral no longer existed, a fact made clear from Appellee's schedule B listing no automobile valued even close to $9,000, and Creditor–Appellant requested monetary relief in the amount of the outstanding debt. Given these facts, this Court concludes that the municipal court suit was a violation of § 524(a)(2).

## B. The $15,000 Award

The bankruptcy court found Bankruptcy Rule 9011 sanctions appropriate, and also held both Creditor–Appellant and Attorney–Appellant to be in civil contempt. As a result, the bankruptcy court awarded judgment against Creditor–Appellant and Attorney–Appellant, jointly and severally, in the amount of $15,000. Appellants appeal this award.

### 1. *Right to a Hearing*

#### a. Right to a Hearing on Bankruptcy Rule 9011 Sanctions

■ First, Attorney–Appellant claims that his due process rights were violated because Bankruptcy Rule 9011 sanctions were imposed without notice. The Sixth Circuit stated in *INVST Financial Group, Inc. v. Chem–Nuclear Systems, Inc.*, 815 F.2d 391, 405 (6th Cir.1987), *cert. denied*, 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987), that, "although the assessment of

sanctions under Rule 11 must comport with due process, the procedure employed to assure due process will 'depend on the severity of the situation and the severity of the sanction under consideration.' " [3] The *INVST* court cited with approval a Seventh Circuit decision, *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 205–206 (7th Cir.1985), where the court held that no hearing was necessary where the district court had participated in the proceedings, and where the sanctions were based on counsel's incompetence in handling the matter by making frivolous claims without first making a proper inquiry into the relevant law and facts.

The bankruptcy judge in the instant case was continuously involved in this case, and presided over the trial at which Attorney–Appellant testified. The bankruptcy judge heard the witnesses, including Attorney–Appellant, evaluated their creditability, reviewed the documentary evidence, and concluded that the actions of Attorney–Appellant and Creditor–Appellant were so egregious as to warrant sanctions. A separate hearing on the sanctions issue was not necessary to familiarize the bankruptcy court with the conduct of Attorney–Appellant.

#### b. Right to a Hearing on Civil Contempt Charges

■ Attorney–Appellant argues that the bankruptcy court erred in finding him in civil contempt because Attorney–Appellant was not aware that he personally was facing such charges. It appears from the record that Creditor–Appellant was aware that it was facing civil contempt.[4] Attorney–Appellant claims that this lack of notice and opportunity for a hearing constitutes a violation of his due process rights. This argument is well-taken.

While the Sixth Circuit has not addressed this precise issue, the Third Circuit, in a similar bankruptcy case, *Remington Rand*

---

**3.** Bankruptcy Rule 9011 is nearly identical to Fed.R.Civ.P. 11, and courts routinely look to judicial interpretations of Rule 11 in applying Bankruptcy Rule 9011.

**4.** Creditor–Appellant does not raise lack of notice as an issue on appeal. Further, in its appel-

late brief, Creditor–Appellant's incorporates the issues presented in Attorney–Appellant's brief, which expressly states, at page 10, that "it was apparent to [Attorney–Appellant] that his client, [Creditor–Appellant], was facing civil contempt . . ."

*Corp.–Delaware v. Business Systems, Inc.,* 830 F.2d 1256 (3rd Cir.1987), dealt with this issue. In *Remington,* a bankruptcy reorganization trustee of a corporation claimed that because the court papers he received stated only that the corporation was facing contempt charges, the bankruptcy court's order finding him in contempt violated his due process rights. The Third Circuit agreed, stating that "Due process requires that, before one is subjected to the court's contempt power, one is entitled to notice that he is being so charged." *Remington,* supra, at 1258, *citing In re Oliver,* 333 U.S. 257, 275, 68 S.Ct. 499, 508, 92 L.Ed. 682 (1948). *See also Dole Fresh Fruit Co. v. United Banana Co.,* 821 F.2d 106, 110 (2nd Cir.1987). This is true whether the contempt threatened be civil or criminal. *Remington, supra,* at 1258.

In the instant case, while Attorney–Appellant clearly knew that Creditor–Appellant was facing contempt charges, the bankruptcy judge did not warn Attorney–Appellant that he personally was in jeopardy of contempt. Accordingly, the judgment of civil contempt against him cannot stand. It is reversed and remanded to the bankruptcy court, which may pursue the contempt charge against Attorney–Appellant by directing a show cause order to him.

## 2. *Rule 9011 Sanctions Against Attorney–Appellant*

### a. Determination That Conduct Was Sanctionable

Bankruptcy Rule 9011 states, in relevant part:

The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that is not interposed for any improper purpose, such as to harass, or to cause unnecessary delay,

or needless increase in the cost of litigation or administration of the case.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Rule 9011 imposes three obligations on an attorney: (1) to conduct a reasonable inquiry to determine that the document is well grounded in fact; (2) to conduct a reasonable inquiry to determine that the positions taken are warranted by existing law or as good faith arguments for extension or modification of existing law; and (3) to determine that the document was not filed for any improper purpose. *Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor,* 875 F.2d 1224, 1229 (6th Cir.1989). Litigants have an ongoing responsibility to review and reevaluate their pleadings and, where appropriate, to modify them to conform to Rule 11. *Herron v. Jupiter Transportation Co.,* 858 F.2d 332 (6th Cir.1988). An attorney's good faith is not a defense against sanctions. *Id.* A court must judge an attorney's conduct by "an objective standard of reasonableness under the circumstances." *INVST, supra* at 401.

A court has wide discretion in selecting the appropriate sanction, *Id.* at 401, and is reviewed under an abuse of discretion standard. *Orlett v. Cincinnati Microwave Inc.,* 954 F.2d 414, 419 (6th Cir.1992). Even so, the Sixth Circuit has established several factors that a court must consider in awarding sanctions.

In deciding whether to award sanctions, the Sixth Circuit has held that the "reasonable attorney fee" referred to in the rule does not necessarily mean actual legal expenses. *INVST Financial Group,* 815 F.2d at 404. The two goals of sanctions are deterrence and compensation, with the former being the principal goal. *Orlett,* 954 F.2d at 419. Because deter-

rence is the main goal of sanctions, courts should impose the least severe sanction that is likely to deter. *Id.; Jackson*, 875 F.2d at 1229.

In the instant case, the bankruptcy court determined that Attorney–Appellant's pursuit of the municipal court action and the assertion of a meritless counterclaim asserted in the bankruptcy action were unreasonable. The court held that the debtor's filing of an adversary complaint in bankruptcy court should have put Attorney–Appellant on notice that a contested issue existed and that no further action should have been taken in the state court pending resolution of the adversary complaint. Yet Attorney–Appellant persisted in the municipal court action.

In the face of such conduct, this Court finds the bankruptcy court's determination that Attorney–Appellant's conduct was sanctionable entirely justifiable. The bankruptcy court had ample opportunity to observe Attorney–Appellant's conduct. Its rationale for awarding Bankruptcy Rule 9011 sanctions against Attorney–Appellant was thoughtful and well-reasoned. Such a determination does not constitute an abuse of discretion.

### b. Amount of Sanctions

In deciding the amount of sanctions to award, a court must also consider the mitigating actions of the party to whom sanctions are to be awarded. *Id.* at 1230. That is, the court must determine whether the party to receive the award acted promptly to bring a violation of Rule 11 to the Court's attention. A party who seeks attorney's fees as a Rule 11 sanction must mitigate damages by acting promptly and avoiding any unnecessary expenses in responding to papers that violate the rule. *Id.* It is an abuse of discretion to award all fees claimed when a party has expended a great deal of time and effort defending patently frivolous claims that could have been dismissed on motion or request for a pretrial conference at an early stage in the proceedings. *Id.*

Additionally, a sanctioning court must also make some inquiry into an attorney's ability to pay a monetary sanction. *Id.* Rule 11 should not be used as a vehicle to drive an attorney out of practice. Even when the offended party's actual expenditures appear reasonable, a district court may determine in its discretion that a smaller amount should be awarded as a sanction in consideration of the financial resources of the offending attorney. *Id.* When a fraction of the actual and reasonable fees requested is sufficient to deter future violations, it is not an abuse of discretion to award such lesser amount. Failure to consider ability to pay is, however, an abuse of discretion. *Id.*

Based on the Sixth Circuit's pronouncements in *Jackson, Orlett,* and *INVST,* this Court is compelled to conclude that the bankruptcy court did not consider the necessary factors in determining the amount of the sanctions to be awarded against Attorney–Appellant. Although the bankruptcy court recited the appropriate factors, it did not apply them. *Jackson, Orlett,* and *INVST, supra,* teach that a court abuses its discretion when it awards sanctions without considering the amount necessary to deter the attorney from future violations, the amount the debtor was forced to expend because of the attorney's unreasonable conduct, the mitigating actions of the opposing party, and the attorney's ability to pay the sanctions.[5] The opinion of the Bankruptcy Court is silent as to a consideration of these factors thereby effectively preventing appellate review. Additionally, the opinion fails to make clear whether the sanctions are for a total amount of $15,000 or are only a fraction of the total award of $15,000 for sanctions

---

**5.** This Court recognizes that, while requiring a consideration of an attorney's ability to pay sanctions, the Sixth Circuit provides no guidance as to how a sanctioning court is to assess an attorney's ability to pay sanctions. In a recent case in which this Court acted as the trial court, this Court determined that sanctions were warranted, and settled on a tentative amount of sanctions. However, prior to determining the final amount of sanctions, this court extended to the sanctioned attorney the opportunity to challenge that amount by submitting to the Court a financial statement and his recent 1040 tax forms.

and civil contempt. Thus, while this Court affirms the determination that sanctions are warranted, the determination of the amount of the sanctions must be remanded for a proper determination of the amount in accordance with the factors discussed above.

### 3. Civil Contempt Finding Against Creditor–Appellant

#### a. Finding of Civil Contempt

It is well established that Congress granted the bankruptcy courts civil contempt power to enforce its orders. *See, e.g.,* *In re Bowling,* 116 B.R. 659 (Bankr. S.D.Ind.1990); *In re Miller,* 81 B.R. 669, 676 (Bankr.M.D.Fla.1988). In finding Attorney–Appellant and Creditor–Appellant in contempt, the bankruptcy was seeking to do just that—to enforce its order discharging the Appellee's debts. The bankruptcy court found that the Creditor–Appellant's actions violated that order, and necessitated a finding of civil contempt.

■ Creditor–Appellant argues that Appellee's "unclean hands" somehow make its actions acceptable, and the $15,000 award clearly erroneous. What Creditor–Appellant fails to consider, however, is that, while Appellee may have failed to list the sale of the conversion kit and the existence of Creditor–Appellant as a secured creditor, and, while Attorney–Appellant may have received conflicting information regarding the collateral, that does not entitle Creditor–Appellant to violate § 524(a)(2). Creditor–Appellant had a host of options for obtaining satisfaction on the debt owed to it by Appellee, including attending the creditors' meeting and inquiring of Appellee as to the condition and whereabouts of the Volkswagen, scheduling an examination of the Appellee pursuant to Bankruptcy Rule 2004, seeking abandonment of and relief from the stay in order to permit repossession of its collateral, filing a complaint objecting to the dischargeability of its particular debt, or filing an objection to the discharge of the debt. Creditor–Appellant and Attorney–Appellant instead chose to file a suit for the money owed Creditor–Appellant by the Ap-

pellee. In so doing, they violated § 524, and cannot now look to Appellee's wrongful actions to justify their actions and save them from sanctions. This Court, therefore, affirms the bankruptcy court's determination that civil contempt against Creditor–Appellant is appropriate.

#### b. Amount Of The Award For Civil Contempt

■ In a civil contempt proceeding, the court may impose a fine, payable to the aggrieved party, as compensation for any damages that were sustained as a result of the contemnor's conduct, but the fine must be based on evidence of actual loss. *Matter of Grand Jury Investigation (90–3–2),* 748 F.Supp. 1188, 1204 n. 22 (E.D.Mich. 1990), *citing Thyssen, Inc. v. S/S Chuen On,* 693 F.2d 1171, 1173 (5th Cir.1982). Ordinarily, a fine for civil contempt must not exceed the actual damage to the complainant plus complainant's reasonable expenses in presenting the contempt to the court. *Winner Corp. v. H.A. Caesar & Co., Inc.,* 511 F.2d 1010, 1015 (6th Cir. 1975). Thus, this Court encounters the same problem in reviewing the amount of the civil contempt sanctions against Creditor–Appellant as discussed with respect to Bankruptcy Rule 9011 sanctions; the bankruptcy court did not explain the determination of the amount of the fine for civil contempt, and, moreover, has not identified what portion of the $15,000 is for civil contempt against Creditor–Appellant. The bankruptcy court has made no findings regarding the actual loss suffered by Appellee due to Creditor–Appellant's conduct. Hence, while the bankruptcy court's decision to hold Creditor–Appellant in civil contempt is affirmed, the determination of the amount of the resulting fine must be remanded to the bankruptcy court for a proper determination of the amount to be assessed against Creditor–Appellant for civil contempt.

**IT IS SO ORDERED.**