**GEIER BROTHERS FARMS,
et al., Plaintiff,**

v.

**FURST–MCNESS COMPANY,
et al., Defendant.**

No. 3:00CV7599.

United States District Court,
N.D. Ohio,
Western Division.

Feb. 22, 2002.

Benjamin F. Yale, Law Office of Benjamin F. Yale, Waynesfield, OH, Kristine H. Reed, Benjamin F. Yale & Associates, Waynesfield, OH, for Geier Brothers Farms, plaintiff.

Benjamin F. Yale, Kristine H. Reed, (see above for address), for Marvin Geier, plaintiff.

Benjamin F. Yale, Kristine H. Reed, (see above for address), for Gerald Geier, plaintiff.

Benjamin F. Yale, Kristine H. Reed, (see above for address), for Mary Geier, plaintiff.

Benjamin F. Yale, Kristine H. Reed, (see above for address), for Nancy Geier, plaintiff.

Julie L. Juergens, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, Paul J Schumacher, Jr., Gallagher, Sharp, Fulton & Norman, Cleveland, OH, Virginia L. Heidloff, Gallagher, Sharp, Fulton & Norman, Cleveland, OH, for Furst–McNess Company, defendant.

David C. Nalley, Murphy & Lyons, Covington, KY, Kevin L Murphy, Murphy & Lyons, Covington, KY, Theodore M. Rowen, Spengler Nathanson, Toledo, OH, for Griffin Industries, Inc., defendant.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Defendants' motions for summary judgment (Doc. Nos. 44 & 46) and Defendants' motion for reconsideration (Doc. No. 90). Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332. For the following reasons, the motions for summary judgment will be granted in part and denied in part, and the motion for reconsideration will be denied.

### BACKGROUND

Plaintiff Geier Brothers Farms ("Geier Brothers") is a multi-commodity farming operation and general partnership located in Mercer County, Ohio.[1] Although Geier Brothers included a hog operation and a grain operation, its primary business was a dairy farming operation. In October 1998, Geier Brothers had a "milking herd" of about 100 cows. Geier Brothers generally placed their herd on a special diet designed to maximize milk production. The diet included products derived from Geier Brothers' own hog and grain operations and a third-party nutritional supplement.

Defendant Griffin Industries, Inc. ("Griffin"), is located in Cold Spring, Kentucky. Griffin is a rendering operation that manufactures fertilizers, animal feeds, and animal feed supplements. One of the feed supplements manufactured by Griffin is Pro Blend M 250000 ("Pro Blend"), a protein supplement for dairy cattle that is custom-blended by Griffin for Defendant Furst–McNess Company ("Furst–McNess"), an Illinois corporation. Furst–McNess marketed the Pro Blend to Geier Brothers.

Geier Brothers began to include Pro Blend in their feed mixtures in January 1998. Although Geier Brothers does not claim that its herd experienced any unexplained deaths during the adoption of the Pro Blend, it does claim that milk production decreased.

On June 16, 1998, Griffin manufactured Pro Blend Lot 7223. Lot 7223 was delivered to Geier Brothers in September 1998. Included with bags of Pro Blend labeled

---

1. The other plaintiffs in this action are the partners in Geier Brothers Farms: Marvin, Gerald, Nancy and Mary Geier. They will be referred to collectively as "Geier."

"Lot 7223" were three unlabeled bags that Geier Brothers presumed also contained Pro Blend. The Pro Blend was combined with silage from the Geier Brother's grain operation in a ratio computed for Geier Brothers by Furst–McNess. Geier Brothers began feeding the resulting feed ration to its dairy herd on October 1, 1998.

Geier Brothers claims that about two weeks after the feed mixture containing Lot 7223 was introduced some of the herd ate less feed, and some stopped eating altogether. Those animals that stopped eating "went down," and as a result they either died on the farm or were "culled." Culled cows were sold at less then fifteen percent of their normal worth to Mr. Chops May (not a party) who delivered them to slaughterhouses or rendering plants. Between October 1998, and January 1999, thirty of Geier Brothers' dairy cows died.

Geier Brothers alleges that the deaths were caused by problems with the Pro Blend in the feed mixture. It claims that Lot 7223 was unfit because it contained evidence of contamination by both salmonella and small metal particles, and because it was discolored, smelly, and unpalatable to the herd.

Geier Brothers brought the instant action on September 27, 2000, and filed an amended complaint on June 28, 2001. Geier Brother's amended complaint contains the following causes of action:

1. Violation of the Lanham Act, 15 U.S.C. § 1125
2. Breach of Implied Warranty
3. Breach of Express Warranty
4. Negligent Preparation and Handling of Feed
5. Negligent Preparation and Recommendation of Feed Ration
6. Intentional Misrepresentation
7. Negligent Misrepresentation
8. Fraud (against Furst–McNess, for sale of a product containing salmonella)
9. Fraud (against Griffin, for sale of an expired product)
10. Mislabeling
11. Failure to Label
12. Violation of Ohio's Animal Feed Laws, Chapter 923 of the Ohio Revised Code.

Both Furst–McNess and Griffin filed a motion for summary judgment, and Geier Brothers filed a response. Prior to the filing of a reply by either Furst–McNess or Griffin, Geier Brothers filed a motion for leave to file an affidavit from expert Walter Guterbock. The motion for leave was granted by marginal entry order and without further briefing. The Defendants subsequently filed both their replies in support of summary judgment and a motion for reconsideration of the grant of leave to file the Guterbock affidavit. Both the motions for summary judgment and the motion for reconsideration are discussed below.

***Discussion***

*I. Motion for Reconsideration*

  A. Standard

Although a motion for reconsideration is not mentioned in the Federal Rules of Civil Procedure, it is often treated as a motion made under Rule 59(e). *McDowell v. Dynamics Corp. of America*, 931 F.2d 380 (6th Cir.1991); *Shivers v. Grubbs*, 747 F.Supp. 434 (S.D.Ohio 1990). The purpose of a motion to alter or amend judgment under Fed.R.Civ.P. 59(e) is to have the court reconsider matters "properly encompassed in a decision on the merits." *Osterneck v. Ernst and Whinney*, 489 U.S. 169, 174, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989). This rule gives the district court the "power to rectify its own

mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 450, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). Generally, there are three major situations which justify a district court altering or amending its judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or to prevent a manifest injustice." *In re Continental Holdings, Inc.*, 170 B.R. 919, 933 (Bankr.N.D.Ohio 1994); *Braun v. Champion Credit Union*, 141 B.R. 144, 146 (Bankr.N.D.Ohio 1992), *aff'd*, 152 B.R. 466 (N.D.Ohio 1993); *In re Oak Brook Apartments of Henrico County, Ltd.*, 126 B.R. 535, 536 (Bankr.S.D.Ohio 1991).

### B. Argument

■ Here, Defendants argue that the motion for leave to file the supplemental affidavit of Dr. Guterbock should have been denied because the information therein contradicts testimony given in his prior deposition, and because the motion for leave was filed only one day before the replies in support of summary judgment were due. The Defendants also claim that they are entitled to reasonable fees and expenses related to the affidavit pursuant to Fed.R.Civ.P. 56(g), because the affidavit was submitted in bad faith and for the purposes of delay.

In its response to the motion for reconsideration, Geier Brothers argues that the filing of the affidavit was not untimely. Geier also points out a number of ways in which the Guterbock affidavit does not contradict his earlier deposition testimony.

■ It is well-established that a party may not create a disputed issue of material fact by submitting an affidavit that contradicts earlier deposition testimony. *See Dotson v. United States Postal Serv.*, 977 F.2d 976, 978 (6th Cir.1992); *Laise v. City*

*of Utica*, 970 F.Supp. 605, 610 (E.D.Mich. 1997) (collecting cases). With this rule in mind, it is not necessary for the Court to grant Defendants' motion for reconsideration. Although some portions of the Guterbock affidavit may duplicate or even contradict testimony elicited in his deposition, other portions do not. Because the Court is capable of disregarding those parts of the affidavit that are not relevant to the decision on the motions for summary judgment, there is no need to grant the motion for reconsideration and strike the affidavit. Furthermore, because there has been no evidence of bad faith or delay, no fees or expenses will be awarded to the Defendants. The motion for reconsideration will be denied.

### II. Motion for Summary Judgment

#### A. Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

### B. Argument

### 1. Proximate Cause

■ Because it is an integral element in a number of Geier Brothers claims, the ability of Geier Brothers to show that Pro Blend proximately caused its losses must be addressed first. Both Furst–McNess and Griffin argue at length that Geier has failed to put forth expert testimony to show that Pro Blend can be distinguished from other feed components as the proximate cause of Geier Brothers' loss. They maintain that the expert retained by Geier Brothers, Dr. Guterbock, was only engaged to testify concerning whether failure to eat could cause the losses experienced by Geier Brothers, not whether that failure was caused by Pro Blend. In support of this argument, Furst–McNess quotes Dr. Guterbock's deposition:

A: Well, the question that was put to me was whether an unpalatable feed or the refusal of cows to eat, especially in early lactation, could cause the excessive losses ... the death and excessive culling that the Geiers saw. And that was the question that I was answering, yes, it could have.

. . . .

A: [A]gain, the question that was put to me was would cows refusing to eat cause the kind of losses that the Geiers had?

. . . .

Q: So, and correct me if I'm wrong, you were asked to provide an expert opinion as to whether[,] if the cows were refusing to eat ... they would experience—the farmers, such as the Geiers, would experience the kind of losses that the Geiers were experiencing?

A: That's correct.

Q: Were you asked to determine why the cows were refusing to eat?

A: No.

(Guterbock Dep. at 16, 23, 25–26).

Had the previous exchange been the end of Dr. Guterbock's deposition as the Defendants suggest, then Geier Brothers might well have been unable to show proximate cause; however, the Defendants' argument is disingenuous, at best, when viewed in light of testimony given by Dr. Guterbock almost directly after the section quoted by Furst–McNess:

Q: As we sit here today, do you have an opinion as to why the cows refused to eat the ProBlend? Let's back up. Do you have—not the ProBlend. Do you have an opinion as to why the cows refused to eat the feed?

A: Yes. My opinion is that it was probably due to the addition of the ProBlend.

Q: Why do you say that?

A: Again, I say that because when a different product was used, the animals recovered. The animals on the farm that did not receive ProBlend did not show the adverse effects. And a cow that was given the opportunity to eat something different, ate it greedily even though she refused to eat the feed on the dairy.

(Guterbock Dep. at 26).

Dr. Guterbock's testimony, taken in a light most favorable to Geier Brothers, would allow a reasonable jury to find that the addition of Pro Blend to the feed mixture was the proximate cause of Geier Brothers' losses. Neither Defendant has shown how it is material to his testimony that this was not the specific question that he was asked. Griffin does suggest in passing that Dr. Guterbock's testimony should be excluded pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Griffin's request, couched in a footnote in its memorandum in support of summary judgment and then mentioned again in its reply, is neither argued nor properly raised. Furthermore, the Defendants' contention that Dr. Guterbock's testimony was based on temporal evidence alone is not well-taken in light of the behavior of the cow given the opportunity to eat different feed. Dr. Guterbock's testimony will not be excluded at this juncture.

### 2. Claims Conceded by Geier

In its response to the motions for summary judgment, Geier Brothers concedes that it is unable to survive summary judgment on its claims against both Defendants for violation of the Lanham Act, mislabeling, failure to label, and violation of the Ohio Animal Feed Act. Geier Brothers also acknowledges that it is unable to maintain Count III against Griffin. Accordingly, summary judgment will be granted in favor of the Defendants on Counts I, X, XI, and XII of the amended complaint, and in favor of Griffin only on Count III of the amended complaint.

### 3. Breach of Implied Warranty

In Count II of its Amended Complaint, Geier Brothers claims that the Defendants breached an implied warranty that "the feed was fit for consumption by lactating dairy cattle and that use of the feed would improve the milk production of cattle fed the product."

In Ohio, claims of breach of implied warranty are governed by the state's Products Liability Act, O.R.C. § 2307.73. *See Long v. Tokai Bank,* 114 Ohio App.3d 116, 127, 682 N.E.2d 1052, 1060 (2d Dist. 1996). Section 2307.73 states, in pertinent part:

(A) A manufacturer is subject to liability for compensatory damages based on a product liability claim only if the claimant establishes, by a preponderance of the evidence, both of the following:

(1) Subject to division (B) of this section, the product in question was defective in manufacture or construction ... was defective in design or formulation ... was defective due to inadequate warning or instruction ... or was defective because it did not conform to a representation made by its manufacturer ...;

(2) A defective aspect of the product in question as described in division (A)(1) of this section was a proximate cause of harm for which the claimant seeks to recover compensatory damages.

O.R.C. § 2307.73 (West 2001).

Both Furst–McNess and Griffin argue that Geier Brothers has not put forth evidence to satisfy the proximate cause requirement in section 2307.73(A)(2). Griffin also argues that Geier Brothers has no

evidence that the Pro Blend was defective in manufacture or construction, design or formulation, or due to inadequate warnings or instructions. Absent is any assertion that Geier Brothers is unable to show that the Pro Blend was defective through failure to conform to a representation made by the manufacturer; further examination of Griffin's argument in that respect reveals that it is merely another attempt to highlight what Griffin perceives to be a lack of evidence of proximate cause. While Furst–McNess does mention the possibility of failure to conform with representations, it does so only to emphasize what it, too, believes to be lack of evidence showing proximate cause.

This Court has already determined, *supra* at II(B)(1), that Geier Brothers has satisfied its burden of showing that the Pro Blend was the proximate cause of its injuries. Furthermore, because neither Defendant properly addressed the issue of representations, there was no need for the Plaintiff to put forth evidence on that issue to survive summary judgment. Summary judgment for the Defendants on Count II of Geier Brothers' Amended Complaint will be denied.

### 4. Breach of Express Warranty

▪ In Count III of its Amended Complaint, Geier Brothers claims that it is entitled to compensatory and incidental damages pursuant to Section 1302.89 of the Ohio Revised Code. Geier Brothers alleges that the Defendants breached an express warranty for a particular purpose. Geier alleges that the Defendants warranted that "the feed was fit for consumption by lactating dairy cattle and that use of the feed would improve the milk production of cattle fed the product, and the label identified what was in the bag." (Amd.

Comp. at 10). Geier Brothers has abandoned its claim of breach of express warranty against Griffin.

Section 1302.26 of the Ohio Revised Code governs the creation of express warranties:

(A) Express warranties by the seller are created as follows:

(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(B) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

O.R.C. § 1302.26 (West 2001).

In its motion for summary judgment, Furst–McNess argues that Geier Brothers is unable to show that any express warranty was created because all of the statements allegedly relied upon by Geier Brothers were mere "puffing."[2] Geier Brothers contends that a warranty was

---

**2.** These statements include, "make your animals productive and profitable no matter what stage of life they may be at," "best nutritionally balanced value for the dollar," and "what's on the tag is in the bag."

created when the salesman for Furst–McNess, Jim Bratton, stated that the use of the Pro Blend would increase milk production; Geier Brothers' desire for increased milk production was the reason for the purchase of the Pro Blend. (Marvin Geier Aff. at 2).

Furst–McNess does not address the increased production argument in its initial motion or in its reply. Instead, the reply reiterates the failed proximate cause argument. Because whether the alleged promise of increased production was mere puffing is a question for the jury, Furst–McNess's motion for summary judgment will be denied as to Court III of the Plaintiffs' Amended Complaint.

### 5. Negligent Preparation and Handling of Feed/Negligent Preparation and Recommendation of Feed Ration

■ In Count IV of its amended complaint, Geier Brothers avers that the Defendants negligently prepared and handled the Pro Blend. It claims that Griffin failed to properly identify the date of manufacture of the Pro Blend and the last date that the Pro Blend could be used. Geier Brothers also claims that Furst–McNess negligently allowed the product to remain in its warehouse and subsequently enter the stream of commerce in an unfit condition. In Count V of the amended complaint, Geier Brothers claims that its losses were caused by negligent preparation and recommendation of the feed ration.

As they argued with respect to previous counts of the amended complaint, Griffin and Furst–McNess contend that Geier Brothers is unable to prove that the allegedly negligent actions cause Geier Brothers' injury. Here, they are correct. Although Geier Brothers has put forth evidence sufficient to create a dispute of material fact as to whether their losses were caused by use of the Pro Blend in general, it has not identified any evidence

tending to show that the losses resulted from the preparation or handling of the feed, or from the preparation and recommendation of the feed ration. Summary judgment will be granted in favor of both Defendants on Counts IV and V of the amended complaint.

### 6. Fraud and Intentional Misrepresentation

■ The amended complaint includes three counts of fraud or intentional misrepresentation. Geier Brothers claims in Counts VI and IIX of the amended complaint that the Defendants falsely misrepresented that the Pro Blend was fit for consumption by lactating cows despite Defendants' knowledge that the Pro Blend contained salmonella, metal shavings, and other dangerous and unpalatable items. These counts also allege that the Defendants knew that the Pro Blend in Lot 7223 had spoiled. In Count IX, Geier Brothers again alleges that the defendants failed to disclose that Lot 7223 had expired, then claims that Griffin intentionally included the unknown, unlabeled packages with the shipment of Lot 7223 despite knowledge that the unlabeled packages did not contain Pro Blend.

■ To make a claim for common law fraud or intentional misrepresentation, a plaintiff must show:

(a) a representation or, where there is a duty to disclose, concealment of a fact;

(b) which is material to the transaction at hand;

(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred;

(d) with the intent of misleading another into relying upon it;

(e) justifiable reliance upon the representation or concealment; and

(f) a resulting injury proximately caused by the reliance.

*Telephone Mgmt. Corp. v. Goodyear Tire & Rubber Co.*, 32 F.Supp.2d 960, 973 (N.D.Ohio 1998) (citing *Russ v. TRW, Inc.*, 59 Ohio St.3d 42, 49, 570 N.E.2d 1076 (1991)).

Griffin contends that it can not be held liable on these claims because it did not make any representations to Geier Brothers prior to the use of the Pro Blend. Furst–McNess maintains that summary judgment is appropriate because Geier Brothers is unable to show that Furst–McNess had any knowledge that the Pro Blend was defective or that Furst–McNess intended to use that knowledge to mislead Geier Brothers.

The Defendants' argument is well-taken. Even assuming, *arguendo*, that both defendants made false material representations to Geier Brothers, Geier Brothers has offered no evidence to show that the representations were made with knowledge of their falsity or with any disregard of whether they were false. There is no evidence that Furst–McNess ever knew that the Pro Blend was defective, and there is no evidence that Griffin knew that the Pro Blend had spoiled and should have been removed from circulation. Summary judgment will be granted in favor of both Defendants on Counts VI, IIX, and IX of the amended complaint.

7. Negligent Misrepresentation

In Count VII of the amended complaint Geier Brothers avers that the defendants falsely and negligently represented that the Pro Blend was unspoiled and untainted by salmonella and metal shavings. The Ohio Supreme Court has adopted the Restatement (Second) of Torts to define negligent misrepresentation:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Delman v. City of Cleveland Heights*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835, 838 (1989) (quoting 3 RESTATEMENT (SECOND) OF TORTS § 552(1) (1965)) (emphasis omitted).

The Defendants argue that Geier Brothers can not show that they did not exercise the required care in obtaining any information provided to the Geier Brother. Although Geier Brothers acknowledges this requirement in its opposition to summary judgment, it does not put forth any proof that it could satisfy the requirement. Summary judgment in favor of the Defendants on Count VII of the amended complaint is appropriate.

### CONCLUSION

For the foregoing reasons, Defendants' motion for reconsideration (Doc. No. 90) will be denied. Defendant Griffin Industries, Inc.'s motion for summary judgment (Doc. No. 46) will be denied as to Count II of the amended complaint and granted as to all other counts. Defendant Furst–McNess Company's motion for summary judgment (Doc. No. 44) will be denied as to Counts II and III of the amended complaint and granted as to all other counts.

IT IS SO ORDERED.

### JUDGMENT ENTRY

For the reasons stated in the Memorandum Opinion filed contemporaneously with this entry, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Defendants' motion for reconsideration (Doc. No. 90) is denied.

FURTHER ORDERED that Defendant Griffin Industries, Inc.'s motion for summary judgment (Doc. No. 46) is denied as to Count II of the amended complaint and granted as to all other counts.

FURTHER ORDERED that Defendant Furst–McNess Company's motion for summary judgment (Doc. No. 44) is denied as to Counts II and III of the amended complaint and granted as to all other counts.